UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:17-cr-61-JMS-DLP-01 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| MIKEL KENDRICK | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cr-00061-JMS-DML |
| | ) | |
| MIKEL KENDRICK, | ) | -01 |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Mikel Kendrick seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A). For the reasons explained below, Mr. Kendrick's motion is **denied**.

### I.   Background

In 2018, Mr. Kendrick pled guilty to nine counts of interference with commerce by robbery, in violation of 18 U.S.C. §§ 2 and 851(a); and one count of aiding and abetting in brandishing a firearm during a crime of violence, in violation of 18 U.S.C. §§ 942(c)(1)(A)(ii). Dkt. 116. Mr. Kendrick was the getaway driver for multiple armed robberies. Dkt. 102 at 5–7. Before sentencing, a presentence investigation report was prepared, and it includes information about Mr. Kendrick's history of serious mental health problems, including instances of suicidal ideation and multiple suicide attempts. *See id.* at 17–18. The Court heard additional testimony and argument about Mr. Kendrick's mental health at the sentencing hearing. *See* dkt. 152.

The Court imposed an aggregate sentence of 120 months of imprisonment, representing concurrent 36-month sentences for the robbery counts and a consecutive 84-month sentence for the firearm count. Dkt. 116. The 84-month sentence was the mandatory minimum for the firearm count, but the 36-month sentence for the robbery sentences represented a downward departure

from the guidelines range of 78 to 97 months. The Court explained that it was deviating downward so that Mr. Kendrick's sentence would not be longer than that of his co-defendant—Antonio Cowherd—who actually participated in the robberies and received a sentence of only 120 months. *See* dkt. 152 at 33.

Mr. Kendrick is currently 23 years old. He has been in custody for more than five-and-a-half years. According to the Bureau of Prisons ("BOP") website, his anticipated release date (with good-conduct time included) is July 17, 2025. *See* https://www.bop.gov/inmateloc/ (last visited June 10, 2022).

Mr. Kendrick filed a pro se motion for compassionate release. Dkt. 148. The Court appointed counsel to represent him, and appointed counsel filed a supporting memorandum on his behalf. Dkt. 159. The United States responded in opposition, dkt. 161, and Mr. Kendrick filed a reply by counsel, dkt. 164. After Mr. Kendrick's motion was fully briefed, the Court ordered him to show cause why the Court should not reject one of his arguments for compassionate release based on the Seventh Circuit's decision in *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). Dkt. 167. Mr. Kendrick filed a response by counsel. Dkt. 170. Thus, his motion is ripe for review.

## II.  Discussion

Mr. Kendrick argues that extraordinary and compelling reasons warrant releasing him because: (1) he suffers from medical conditions that increase his risk of experiencing severe symptoms if he contracts COVID-19 again; and (2) COVID-19 restrictions have damaged and present an ongoing threat to his mental health. Dkt. 159. He also argues that he would not be a danger to the community if released and that the sentencing factors in 18 U.S.C. § 3553(a) weigh in favor of release. *Id.*

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Yet, under one exception to this rule, a court may reduce a sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," if it finds that there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The Seventh Circuit has held that a court has broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). The court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately, "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).

### A. Risk from COVID-19

Mr. Kendrick's first reason for requesting release—the risk he faces from the COVID-19 pandemic in light of his medical conditions (including obesity)—is unavailing. "[F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer far more relief than a judicial order. . . . [F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). The Seventh Circuit has repeatedly affirmed that the risk an inmate faces from COVID-19 cannot be an extraordinary and compelling reason warranting release under § 3582(c)(1)(A)(i) unless the inmate shows that he cannot "receive or benefit from a vaccine." *Id.*; *see also United States v. Clemons*, No. 21-2440, 2022 WL 1436801, at *2 (7th Cir. May 6, 2022)

("Despite the threat of new coronavirus variants, we reiterated that an inmate's risk of COVID-19 cannot justify compassionate release absent an inability to receive or benefit from a vaccine.") (cleaned up). Mr. Kendrick is fully vaccinated against COVID-19. *See* dkt. 170-1. His counsel speculates that the vaccine may not work for him because he is obese, *see* dkt. 170, but he has presented no evidence that he is unable to receive or benefit from the vaccine.[1] Additionally, Mr. Kendrick "has not presented any evidence establishing that he is more at risk for an adverse outcome in prison than he would be if released." *United States v. Barbee*, 25 F.4th 531, 533 (7th Cir. 2022). Specifically, he has not presented "data showing that vaccinated prisoners are at materially greater risk of breakthrough infections than other vaccinated persons." *United States v. Avila*, No. 21-2383, dkt. 19 (7th Cir. Feb. 15, 2022). Accordingly, Mr. Kendrick has failed to carry his burden to show that the risk of COVID-19 presents an extraordinary and compelling reason for release, whether standing alone or in combination with any other factors.

  B.  *Mental-Health Risk Because of COVID-19 Restrictions*

Mr. Kendrick's second potentially extraordinary and compelling reason for release—the danger that COVID-19 restrictions pose to his mental health—requires more discussion.

---

[1] Counsel cites to a statement from the CDC stating that obese people may not benefit from the vaccine, *see* dkt. 170 at 6 n.14, but that page no longer contains such a statement, *see* https://www.cdc.gov/obesity/data/obesity-and-covid-19.html (last visited June 10, 2022). Counsel also makes arguments based on the possibility that the COVID-19 vaccine would not be as effective in real-world conditions as it was in clinical trials, *see* dkt. 170 at 4–5, but the CDC currently reports as follows: "Vaccines reduce the risk of COVID-19, including the risk of severe illness and death among people who are fully vaccinated. In addition to data from clinical trials, evidence from real-world vaccine effectiveness studies show that COVID-19 vaccines help protect against COVID-19 infections, with or without symptoms (asymptomatic infections). Vaccine effectiveness against hospitalizations has remained relatively high over time, although it tends to be slightly lower for older adults and for people with weakened immune systems." *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited June 10, 2022). Even assuming that Mr. Kendrick's obesity means that he has a weakened immune system, the fact that vaccine effectiveness against hospitalization is "slightly lower" does not mean that the vaccine does not benefit him.

As explained, the Court was aware of Mr. Kendrick's serious mental health issues when it imposed the sentence in this case—including the fact that he had previously attempted suicide on more than one occasion. Counsel explains that, sadly, Mr. Kendrick's mental health struggles have continued during his incarceration.

At the time Mr. Kendrick's motion was being briefed, he was being housed in the SHU at FCI Schuylkill.[2] The record is not very clear, but it appears that Mr. Kendrick first asked to be placed in the SHU at FCI Petersburg Medium in February 2020 because he was trying to avoid drugs available in the prison. Apparently because of COVID-19-related movement restrictions, Mr. Kendrick was still in the SHU in July 2020, right before he was set to be transferred to FCI Schuylkill. He was found hanging in his cell with a bed sheet around his neck and lacerations on his arm. Fortunately, he was not seriously harmed, but he was placed on suicide watch. The contemporaneous records simply reflect that when asked about his suicide attempt, Mr. Kendrick told staff, "I am tired." In August 2020, Mr. Kendrick was transferred to FCI Schuylkill. For reasons not disclosed by the record, he remained in the SHU after his transfer. In October 2020, Mr. Kendrick was placed on suicide watch again for one night because he was having intrusive thoughts, which led to decompensation and acting out. He did not, however make another suicide attempt. The record does not include any evidence about the mental health care that he received after this date, although counsel represents that COVID-19 restrictions prevented him from participating in group therapy, which he had previously found helpful.

In April 2021, Mr. Kendrick was transferred to USP Coleman, and he has since been transferred again to USP Canaan. It appears that, as of April 2021, Mr. Kendrick was no longer

---

[2] The facts in this paragraph are drawn from Mr. Kendrick's medical records, *see* dkts. 159-2, 159-3, not counsel's description of those records.

6

housed in the SHU. *See* dkt. 164 at 4 (noting that Mr. Kendrick "recently spent more than one year in solitary confinement").

Mr. Kendrick certainly suffers from serious mental health problems, and those problems may have been exacerbated by the COVID-19 pandemic and associated restrictions. But, without minimizing the severity of Mr. Kendrick's July 2020 suicide attempt, the events that led to the October 2020 suicide watch, or how hard it must have been for him to spend a year in solitary confinement, the record does not suggest that—after October 2020—Mr. Kendrick continued to face significant mental health care struggles, let alone episodes of decompensation, suicidal ideation or suicide attempts. Neither does the record include any evidence showing that Mr. Kendrick was denied appropriate mental health care treatment after that date or that he is not currently receiving appropriate mental health treatment. For example, a record created at the time of the October 2020 suicide watch states that Mr. Kendrick had been scheduled for a visit with a psychiatrist the next day but that intrusive thoughts led to decompensation and acting out, necessitating the suicide watch. *See* dkt. 159-2 at 10. Moreover, the Court was aware of Mr. Kendrick's serious mental health history—including the suicidal ideation and suicide attempts— when it sentenced him. The Court could not have anticipated the COVID-19 pandemic and its specific restrictions, but the Court was certainly aware at the time of sentencing that prison and the restrictions associated with life in prison could negatively impact Mr. Kendrick's mental health. For all of these reasons, the Court concludes that Mr. Kendrick has not established extraordinary and compelling reasons warranting release.

Given the determination that Mr. Kendrick has not shown extraordinary and compelling reasons to justify his release, the Court need not address whether the sentencing factors listed in

18 U.S.C. § 3553(a) weigh in favor of his release. If Mr. Kendrick's circumstances change, he may file a renewed motion.

### III. Conclusion

For the reasons stated above, Mr. Kendrick's motion for compassionate release, dkt. [148], is **denied**.

**IT IS SO ORDERED.**

Date: 6/13/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel